ROBERT S. MELCIC
Nevada Bar No. 14923
4930 Mar Vista Way
Las Vegas, Nevada 89121
Phone: (702) 526-4235
Email: robertmelcic@gmail.com
*Attorney for Plaintiff Martrail Robinson*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MARTRAIL ROBINSON,<br><br>Plaintiff,<br><br>vs.<br><br>CIRCA RESORTS LLC, a domestic corporation; BRENDAN CASTILLIO, Security Investigator for the CIRCA property; DOE BUSINESS ENTITIES 2 through 10; DOE INDIVIDUALS 2 through 50, inclusive, in their individual and official capacities,<br><br>Defendants. | Case No.:<br>Dept. No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW Plaintiff, MARTRAIL ROBINSON, by and through his counsel, Robert S. Melcic, and complains against Defendants CIRCA RESORTS LLC, BRENDAN CASTILLIO, DOE BUSINESS ENTITIES 2 through 10, and DOE INDIVIDUALS 2 through 50, in their individual and official capacities, as follows.

**I.**

**STATEMENT OF THE CASE**

This is a service dog case arising under Title III of the Americans with Disabilities Act, which prevents discrimination on the basis of disability by places of public accommodation and commercial establishments. Mr. Robinson alleges that he was discriminated against on the basis of his physical disabilities—PTSD and vision problems—which arose from his two tours of military duty in Afghanistan. Mr. Robinson is rated as 100% disabled by the U.S. Department of Veterans Affairs.

The unlawful discrimination against Mr. Robinson included Defendants' repeated refusals to accommodate his service dog, Onyx, when Mr. Robinson was a customer at the Stadium Swim area of

1

the Circa Resorts property. Curiously, Circa had accommodated Mr. Robinson on approximately five to seven prior occasions in the Stadium Swim area alone. But on Sunday, May 16, 2021, security guards at the Stadium Swim area of the hotel suddenly approached Mr. Robinson and told him to vacate the area immediately on their claim that Onyx had, in their words, "nipped" at a female employee. Mr. Robinson was in control of his animal the entire time and never witnessed his service dog bite anyone.

Circa then used their fabricated story to justify excluding Mr. Robinson and his service dog from the Stadium Swim area entirely on Tuesday, May 25, 2021. Circa has already averred in conversations with counsel that they may have destroyed the security tape so important to this case even though the facts around this alleged incident of discrimination were likely to lead to litigation.

Mr. Robinson seeks monetary damages for negligence and breach of contract, equitable relief, attorney's fees, litigation expenses and costs for the violation of the ADA, and injunctive relief, including reinstatement of his ability to be a customer free to visit the Circa Stadium Swim area with his service dog. He seeks damages and equitable relief both for himself in being kept from this premium area within the Circa property and so that Circa does not discriminate in the future against similarly-situated disabled individuals whose disabilities necessitate their use of service dogs as protected by the Americans with Disabilities Act, its amendments, and related federal regulations.

## II.

## JURISDICTION AND VENUE

1. The federal claims of this case are brought pursuant to 8 U.S.C. § 1331 ("[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").

2. In particular, this case asserts federal civil rights claims, arising under the Constitution of the United States, actionable pursuant to 42 U.S.C. § 12101 *et seq.* (the Americans with Disabilities Act and the Americans with Disabilities Act Amendment Act (collectively, "ADA")).

3. This Court has supplemental jurisdiction over the state-law claims, pursuant to 28 U.S.C. § 1367(a) ("the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").

2

4. Venue is proper in the U.S. District Court situated in Las Vegas, Nevada, under Local Rule IA 1-6 and 28 U.S.C. § 1391(b)(1) and (2) because:

   a. a substantial part of the events or omissions giving rise to the claim occurred in the "unofficial" Southern Division embracing Clark County where this court is located; and

   b. because the parties conducted business and/or resided in Las Vegas, Nevada, where a substantial part of the events or omissions giving rise to the claims of the case occurred.

## III.

## PARTIES

5. At all times relevant to this action, Plaintiff MARTRAIL ROBINSON (hereinafter, "PLAINTIFF"), was, and is, a resident of the State of Nevada, County of Clark.

6. On information and belief, Defendant CIRCA RESORTS LLC (hereinafter, "CIRCA" or "DEFENDANT"), at all times relevant to this action, was, and is, a domestic corporation doing business in the State of Nevada, County of Clark; and at all times relevant hereto, owned and operated The Circa Hotel & Casino including the Circa Stadium Swim area.

7. On information and belief, Defendant BRENDAN CASTILLIO ("CASTILLIO") is a citizen of the state of Nevada, who, on information and belief, resided in the County of Clark at all relevant times hereto and was employed by Defendants CIRCA and DOE BUSINESS ENTITIES 2-10 as the Security Investigator for the property. Defendant CASTILLIO is sued in his official and individual capacities.

8. On information and belief, the true names, capacities, and specific involvement of the Defendants sued herein as DOE BUSINESS ENTITIES 2 through 10 and DOE INDIVIDUALS 2 through 50 are unknown to PLAINTIFF, who sues these Defendants by such fictitious names; PLAINTIFF alleges that each of the Defendants sued herein as DOEs performed acts and are responsible in some manner for the events and injuries alleged herein.

9. PLAINTIFF alleges that DOE BUSINESS ENTITIES 2 through 10 and DOE INDIVIDUALS 2 through 50, inclusive, are, and at all times relevant hereto were, residents of the state of Nevada or had a presence in Nevada or are otherwise amenable to suit in Nevada under Nevada's "Long-Arm" statutes; PLAINTIFF will seek leave of Court to amend this *Complaint* to state the

true names, capacities, and specific involvement of such Defendants when they have been ascertained.

10. PLAINTIFF is informed and believes, and therefore alleges, that each of the Defendants sued herein, including the DOE Defendants, was the agent, employee, servant, or corporate employer of the other and was acting within the scope and purpose of such an agency, employment, service, or corporate activity, and that each of the DEFENDANTS sued herein is negligently, contractually, intentionally, recklessly, strictly, or otherwise responsible in some manner for the events and happenings alleged herein, and proximately caused the injuries alleged herein.

## IV.
## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

11. PLAINTIFF is a disabled individual within the meaning of the Americans with Disabilities Act ("ADA") and the Americans with Disabilities Act Amendments Act ("ADAAA") (collectively hereinafter, "ADA") and NRS 651.050(1).

12. PLAINTIFF is a disabled veteran who has been judged 100 percent disabled by the Department of Veteran's Affairs.

13. Specifically, PLAINTIFF suffers from PTSD and diplopia, double vision in his left eye due to shrapnel from an explosion in Afghanistan.

14. PLAINTIFF has owned his service dog Onyx for seven years and has taken Onyx into public without issue, including on airline flights.

15. Onyx wears a vest and harness at all times that clearly identifies him as a service dog.

16. On information and belief, at all times relevant hereto, Defendant CIRCA was obligated as a place of public accommodation to accommodate PLAINTIFF's disabilities and not to discriminate against PLAINTIFF, which included allowing access for PLAINTIFF's service dog onto CIRCA's commercial property, including into the Stadium Swim area, a place of public accommodation as defined by NRS 651.050(3) *et. seq*.

17. On information and belief, at all times relevant hereto, Defendant CIRCA vested in its employees express, inherent, and/or implied trust, authority, and wide discretion in the manner, methodologies, and procedures for accommodating disabled hotel patrons.

18. On information and belief, at all times relevant hereto, Defendant CIRCA held itself out to the world as so vesting such trust, authority, and discretion in its employees and presented itself to the world as a hotelier who is knowledgeable regarding and who complies with the Americans with Disabilities Act.

19. PLAINTIFF took Onyx to CIRCA's Stadium Swim area on at least five to seven occasions prior to PLAINTIFF's ouster from the property on Sunday, May 16, 2021.

20. On Sunday May 16, 2021, between the hours of 2:00 PM and 4:00 PM, PLAINTIFF went to CIRCA Stadium Swim accompanied by Onyx and PLAINTIFF's friend, Jimmy Lee Scott, Jr..

21. PLAINTIFF was on a privately-maintained guest list and was comped, so he did not have to pay an entry fee.

22. Inside the CIRCA Stadium Swim area, Mr. Scott spent approximately $200 on drinks of which $50—two drinks—were for PLAINTIFF.

23. Inside the CIRCA Stadium Swim area, PLAINTIFF began a conversation with two Las Vegas Metropolitan police officers who were also in the area.

24. During these conversations, a DOE CIRCA employee repeatedly brought out ice for Onyx without being asked to.

25. This was the first and only time that anyone had brought ice out for the dog.

26. While PLAINTIFF was talking to the Metro officers, PLAINTIFF was approached by CIRCA security guards who asked PLAINTIFF to vacate the property immediately.

27. The CIRCA security guards claimed that Onyx had, in their words, "nipped" a female employee in the Stadium Swim area.

28. While PLAINTIFF was leaving the premises with Onyx, he was approached and told by another security employee at the CIRCA that the incident was fabricated for the purposes of making PLAINTIFF leave the premises.

29. This employee walked PLAINTIFF the whole way out of the property, gave PLAINTIFF his business card, and said to email him, stating, "If you have any issues, e-mail me because what happened was wrong."

30. PLAINTIFF then went back inside the main casino, accompanied by Onyx, and had drinks

5

before leaving, without incident.

31. On Monday, May 17, 2021, PLAINTIFF called the security office at the CIRCA and spoke with a woman named Brittany DOE.

32. During the conversation, PLAINTIFF recounted that what happened to him was wrong.

33. Brittany DOE told PLAINTIFF that he needed to come in to speak to someone about the incident and stated that she could not discuss it on the phone.

34. On Tuesday May 25, 2021 at approximately 5:45 PM, PLAINTIFF returned to the CIRCA with his neighbor Robert McCula.

35. PLAINTIFF was able to enter the property as a whole but was denied entry at the Stadium Swim area.

36. There, CIRCA Employees requested that PLAINTIFF produce, in their words, Onyx's "service dog papers" in direct violation of the ADA.[1]

37. PLAINTIFF then went to the CIRCA's security office and spoke with CASTILLIO, the Security Investigator for the CIRCA.

38. PLAINTIFF requested that CASTILLIO review the security tape to see if the alleged "nipping" incident had, in fact, occurred on May 16; PLAINTIFF also informed CASTILLIO of his federal obligations under the ADA.

39. To the best of PLAINTIFF's knowledge, CASTILLIO never reviewed the tape.

40. Based on counsel's conversation with CIRCA, the tape may have been impermissibly destroyed.

///
///
///
///

---

[1] "Staff may ask two questions: (1) is the dog a service animal required because of a disability, and (2) what work or task has the dog been trained to perform. Staff cannot ask about the person's disability, require medical documentation, require a special identification card or training documentation for the dog, or ask that the dog demonstrate its ability to perform the work or task." *Service Animals*. U.S. DOJ. (2010). Available at: https://www.ada.gov/service_animals_2010.htm.

6

—FEDERAL CLAIMS—

## V.
## FIRST CLAIM FOR RELIEF

*Unlawful Discrimination, Harassment, and Retaliation Based on Disability*

**Americans with Disabilities Act and Amendments Act - 42 U.S.C. § 12132** *et seq.*

**(Asserted Against Defendants CIRCA, CASTILLIO, DOE BUSINESS ENTITIES 2-10, and DOE INDIVIDUALS 2-50)**

41. PLAINTIFF incorporates by reference all allegations of this *Complaint*, as though fully set forth herein.

42. CIRCA is subject to Title III of the ADA since it is a place of public accommodation as defined by 42 U.S.C. § 12181(7)(A); its operations as a hotel affect commerce.

43. Under the ADA's anti-discrimination provision, codified at 42 U.S.C. § 12182(a), "[n]o individual shall be discriminated against on the basis of disability, in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

44. PLAINTIFF sought to avail himself of the services, amenities, and facilities offered by the hotel managed by CIRCA.

45. At all times, PLAINTIFF's service dog Onyx was under the direct control of PLAINTIFF with both a harness and a leash.

46. PLAINTIFF's use of a service animal informed CIRCA of PLAINTIFF's required accommodations for his disability; CIRCA denied these reasonable accommodations even though providing them would not have created an undue burden for DEFENDANT.

47. CIRCA, through its officers, directors, managers, supervisors, agents, and/or employees discriminated against PLAINTIFF on the basis of his disabilities by refusing to remove barriers to PLAINTIFF's access and use of their hotel, specifically, the Stadium Swim area.

48. As a result of this intentional discrimination, PLAINTIFF was excluded from equal access to the full use and enjoyment of all of CIRCA's hotel, a place of public accommodation.

49. Onyx was improperly excluded, but had Onyx been properly excluded, DEFENDANT also did not give PLAINTIFF the opportunity to obtain goods, services, and accommodations without having Onyx on the premises, meaning, when Onyx was deemed to be a problem, PLAINTIFF was unilaterally excluded also in violation of federal regulations.[2]

50. PLAINTIFF seeks a permanent injunction requiring CIRCA to comply with the ADA in the future by ensuring that patrons with legitimate and well-controlled service animals not be excluded from the property.

51. PLAINTIFF seeks a declaration that CIRCA violated his rights under the ADA.

52. As a direct and proximate result of CIRCA's intentional discrimination against him, PLAINTIFF sustained damages entitling him to equitable relief, as allowed by law, according to proof at trial.

53. As a further, direct, and proximate result of CIRCA's intentional discrimination against him, PLAINTIFF has had to retain the services of attorneys in this matter, for which he seeks reasonable attorneys' fees and costs, including under 42 U.S.C. § 12205 and 36 C.F.R §36.505.

—STATE CLAIMS—

VI.
SECOND CLAIM FOR RELIEF

*Unlawful Deprivation of Rights and Privileges Afforded to Persons with Disabilities in Nevada*

**Nevada Revised Statute § 651.050 *et seq*. Violation of the Public Accommodations Chapter**

**(Asserted Against Defendants CIRCA, CASTILLIO, DOE BUSINESS ENTITIES 2-10, and DOE INDIVIDUALS 2-50)**

54. PLAINTIFF incorporates by reference all other allegations of this *Complaint*, as though fully

---

[2] "If an animal is properly excluded. If a public accommodation properly excludes a service animal under § 36.302(c)(2), it shall give the individual with a disability the opportunity to obtain goods, services, and accommodations without having the service animal on the premises." *Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities.* 28 C.F.R. §36.302 (2010). Available at: https://www.federalregister.gov/documents/2010/09/15/2010-21824/nondiscrimination-on-the-basis-of-disability-by-public-accommodations-and-in-commercial-facilities.

8

set forth herein.

55. The state of Nevada has a public policy to protect the welfare, prosperity, health, and peace of all the people of the State and to foster the right of all persons reasonably to seek and be granted services in places of public accommodation without discrimination, distinction, or restriction because of disability, pursuant to Nevada Revised Statute § 233.010(2).

56. The state of Nevada enacted legislation to ensure that all persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, without discrimination or segregation on the ground of disability, pursuant to Nevada Revised Statutes § 651.070.

57. CIRCA, through its officers, managers, supervisors, agents, and/or employees violated Nevada Revised Statutes § 651.090(1)(a-c) when they deprived PLAINTIFF of access to their facilities and services based on his disability.

58. As a direct and proximate result of their intentional and retaliatory discrimination alleged herein, CIRCA is civilly liable to PLAINTIFF for damages sustained and for prospective injunctive and declaratory relief, costs, and reasonable attorney's fees, as allowed by Nevada Revised Statute § 651.090(2)(a-b), according to proof at trial.

## VII.
## THIRD CLAIM FOR RELIEF

*Unlawful Interference with the Use of a Service Animal*

**Nevada Revised Statute § 426.790** *et seq***.**

**(Asserted Against Defendants CIRCA, CASTILLIO, DOE BUSINESS ENTITIES 2-10, and DOE INDIVIDUALS 2-50)**

59. PLAINTIFF incorporates by reference all other allegations of this *Complaint*, as though fully set forth herein.

60. The state of Nevada enacted legislation to ensure that persons with service animals would not have the use of their service animal interfered with or obstructed. NRS § 426.790.

61. CIRCA, through its officers, managers, supervisors, agents, and/or employees violated Nevada Revised Statutes § 426.790(1)(a) when they obstructed and interfered with Onyx's ability to perform service for PLAINTIFF as by demanding that Onyx and PLAINTIFF immediately

vacate the premises.

62. As a direct and proximate result of their intentional and retaliatory discrimination, CIRCA is civilly liable to PLAINTIFF for damages sustained and for punitive damages and attorney's fees, as allowed by Nevada Revised Statute § 426.820.

## VIII.
## FOURTH CLAIM FOR RELIEF

### *Defamation*

**(Asserted Against Defendants CIRCA, DOE BUSINESS ENTITIES 2-10, and DOE INDIVIDUALS 2-50)**

63. PLAINTIFF incorporates by reference all other allegations of this *Complaint*, as though fully set forth herein.

64. DEFENDANTS committed defamation against PLAINITFF when they published a false statement about him to a third party that they knew to be untrue regarding the purported safety of his service animal.

65. Upon information and belief, DEFENDANTS either published this false statement about PLAINTIFF to their security personnel and others and/or encouraged their security personnel to create and publish the false statement to others.

66. DEFENDANTS then used this false statement as justification to take negative action against PLAINTIFF in violation of NRS § 651.090(1)(a-c) in order to make him leave the Stadium Swim area.

67. DEFENDANTS' publication of a falsehood about PLAINTIFF's service dog was malicious, intentionally harmful, and negligent.

68. DEFENDANTS' malicious, intentionally harmful, and negligent publication was the direct and proximate cause of PLAINTIFF's harm, which includes but is not limited to: embarrassment, damage to his reputation and the safety reputation of his service animal, and capricious exclusion from an area where he had the lawful right to be, where he had even been comped to be, and where he had been on approximately five to seven prior occasions.

## IX.

# RESPONDEAT SUPERIOR LIABILITY[3]

*Vicarious Liability of Employers for Conduct by Their Employees, Occurring in the Course and Scope of Employment*

**(Asserted Against Defendants CIRCA and DOE BUSINESS ENTITIES 2-10)**

69. PLAINTIFF incorporates by reference all other allegations of this *Complaint*, as though fully set forth herein.

70. At all relevant times herein, Defendants CASTILLIO and DOE INDIVIDUALS 2-50, and each of them, were under the control of their respective employers, including Defendants CIRCA and DOE BUSINESS ENTITIES 2-10.

71. At all relevant times herein, the acts of CASTILLIO and Defendants DOE INDIVIDUALS 2-50, and each of them, complained of herein, caused injury and harm to PLAINTIFF and created culpability for violating federal and state law, as alleged herein.

72. At all relevant times herein, the culpable and injurious acts of Defendants CASTILLIO and DOE INDIVIDUALS 2-50, and each of them, occurred when they were under the control of their respective employers, CIRCA and DOE BUSINESS ENTITIES 2-10, and such acts by these employees occurred within the course and scope of their employment.

73. Based on the foregoing, PLAINTIFF is entitled to invoke the doctrine of *Respondeat superior* to impose vicarious liability on Defendants CIRCA and DOE BUSINESS ENTITIES 2-10 as respective employers of Defendants CASTILLIO and DOE INDIVIDUALS 2-50, for the culpable conduct of these employees occurring within the course and scope of their employment.

///

///

---

[3] *Respondeat superior* is not properly a cause of action or a claim for relief, but rather, a method of assigning liability to an employer for the conduct of its employees. See *Fernandez v. Penske Truck Leasing Co., L.P.* 2021 WL 1832571, 1 (D. Nev. 2012) (citing *Cruz v. Durbin*, 2011 WL 1792765 (D. Nev. 2011)). Accordingly, this section is not labeled as a claim for relief, but it seeks to assign liability to Defendants CIRCA and DOE BUSINESS ENTITIES 2 through 10, vicariously, for the acts of their employees, including Defendants CASTILLIO and DOE INDIVIDUALS 2-50.

## X.

## NEGLIGENT HIRING AND ENTRUSTMENT[4]

*Vicarious Liability of Employers for Hiring Bad Employees and Entrusting Sensitive Tasks to Employees not Able to Carry Them Out*

**(Asserted Against Defendants CIRCA and DOE BUSINESS ENTITIES 2-10)**

74. PLAINTIFF incorporates by reference all other allegations of this *Complaint*, as though fully set forth herein.

75. DEFENDANTS had a duty to PLAINTIFF to use reasonable care in the training and supervision of their employees to ensure that they were fit for their positions, including by training security employees to discern the difference between impermissible profiling on the basis of disability and a genuine security threat.

76. DEFENDANTS breached their duty to PLAINTIFF when they allowed CASTILLIO and DOE INDIVIDUALS 2-50 to take adverse action against PLAINTIFF on the basis of a defamatory statement that targeted PLAINTIFF because of his disability.

77. The hostile and capricious actions of DEFENDANTS' employees directly and proximately caused injury to PLAINTIFF.

78. DEFENDANTS CIRCA and DOE BUSINESS ENTITIES 2 through 10 should have known better than to entrust sensitive screening of ADA-eligible hotel patrons to employees who were liable to treat the patrons as a security threat simply by virtue of their being accompanied by a service dog.

79. The incompetence of DEFENDANT's negligently hired and poorly trained employees was both the direct and proximate cause of PLAINTIFF's injuries.

---

[4] Negligent hiring and entrustment are not properly causes of action or claims for relief, but rather, methods of assigning liability to an employer for the conduct of its employees. To state a claim for negligent training and supervision in Nevada, the Plaintiff must show "(1) a general duty on the employer to use reasonable care in the training and/or supervision of employees to ensure that they are fit for their positions; (2) breach; (3) injury; and (4) causation." *Okeke v, Biomat USA*, *Inc.*, 927 F. Supp. 2d 1021, 1028 (D. Nev. 2013) citing *Reece v. Republic Services, Inc.,* 2011 WL 868386, *11 (D. Nev. Mar. 10, 2011). Claims for negligent training and supervision are based upon the premise that an employer should be liable when it places an employee, who it knows or should have known behaves wrongfully, in a position in which the employee can harm someone else. *Id.* citing *Daisley v. Riggs Bank, N.A.,* 372 F.Supp.2d 61, 79 (D.D.C.2005).

80. PLAINTIFF has sustained damage including but not limited to: embarrassing him in front of his friends, damage to his reputation and the safety reputation of his service animal, profiling him for having a disability that is protected by the ADA, and capricious exclusion from an area where he had the lawful right to be, where he had even been comped to be, and where he had been on approximately five to seven prior occasions without incident.

## XI.

## FIFTH CLAIM FOR RELIEF

*Negligence*

**(Asserted Against Defendants CIRCA, CASTILLIO, DOE BUSINESS ENTITIES 2-10, and DOE INDIVIDUALS 2-50)**

81. PLAINTIFF incorporates by reference all other allegations of this *Complaint*, as though fully set forth herein.

82. DEFENDANTS owned a duty to PLAINTIFF to deal with him legally and not profile him impermissibly on account of his disability and use of a service animal.

83. DEFENDANTS generally breached that duty to PLAINTIFF when they kicked him off their property for false reasons that targeted his disability.

84. CASTILLIO in particular breached his duty to PLAINTIFF to behave as a reasonably competent Security Investigator when he failed to review the security tape of the Stadium Swim area on May 16, 2021 after being specifically requested by PLAINTIFF to do so.

85. As a direct and proximate result of the breach of duty by DEFENDANTS, PLAINTIFF was injured in a variety of ways that included: embarrassing him in front of his friends, profiling him for a disability that is protected by the ADA, disparaging his reputation and the safety reputation of his service dog, and treating him like an outcast who was no longer welcome in the Stadium Swim area.

86. Because of these injuries, PLAINTIFF has suffered lasting damage including no longer being able to be a patron at the Stadium Swim area with his service dog.

87. This damage isolates PLAINTIFF from his community on the basis of his disability, an outcome

13

that the ADA was specifically enacted to prevent.

## XII.

## SIXTH CLAIM FOR RELIEF

*Breach of Contract*

**(Asserted Against Defendants CIRCA, DOE BUSINESS ENTITIES 2-10, and DOE INDIVIDUALS 2-50)**

88. PLAINTIFF incorporates by reference all other allegations of this *Complaint*, as though fully set forth herein.

89. PLAINTIFF was a customer who had repeatedly spent money at CIRCA's various venues, including the Stadium Swim area, and who had money spent on his behalf in the Stadium Swim area on the day that he was evicted from that area of the property.

90. PLAINTIFF has been inside Stadium Swim with his service dog Onyx at least five to seven prior occasions; he has been inside Circa as a whole with his dog on more occasions than that.

91. Stadium Swim has entry fees that range from $20 per person to $50 per person depending on the time of week and whether it is a holiday weekend.

92. The drinks in the Stadium Swim area of the CIRCA hotel are also more expensive than in the rest of the hotel.

93. PLAINTIFF has never been in the Stadium Swim area without purchasing a drink for himself or having one purchased for him.

94. On May 16, 2021, PLAINTIFF's entry fee was waived because he was on a privately-maintained guest list.

95. Prior to May 16, 2021, PLAINTIFF had had his entry fee to Stadium Swim waived on three other occasions because of being on the same privately-maintained guest list.

96. One cost of enjoyment of the Stadium Swim area is the premium that patrons pay on refreshments in that area; this premium is a contract with the patron: to remain in and enjoy this area, one will pay a premium on the refreshments sold there; the offer to enjoy the amenities of the Stadium Swim by paying a higher premium for refreshments is offered to the public at large.

97. PLAINTIFF repeatedly accepted this offer and performed by paying good consideration for the more expensive refreshments offered at the Stadium Swim area on at least five to seven prior occasions.

98. On May 16, 2021, PLAINTIFF was accompanied by his friend, Jimmy Lee Scott Jr., who bought drinks and gambled in the Stadium Swim area; Lee spent approximately $200 total on drinks of which approximately $50—two drinks—were for PLAINTIFF's benefit.

99. At all relevant times herein, DEFENDANTS made binding, enforceable promises to PLAINTIFF amounting to a contract and/or statutory or regulatory duties that PLAINTIFF would not be asked to leave the Stadium Swim area because he was a paying guest there, he was not loitering, and he was not disturbing anyone else.

100. At all relevant times herein, these binding and enforceable promises made by DEFENDANTS to PLAINTIFF included those arising from Defendant's policies, agreements, promises, contracts, service behavior, orders, customs, usages, patterns, and practices and state and federal law to which DEFENDANTS are subject.

101. Defendants breached these enforceable promises and statutory regulations when they evicted PLAINTIFF from the Stadium Swim area without just cause and on the basis of a false and defamatory story that at least one security employee admitted was completely untrue.

102. PLAINTIFF fulfilled his obligations under the contract by purchasing drinks in the area, having his friend gamble, not loitering, and not causing a disruption to others.

103. As a result of DEFENDANTS' breach of obligations, enforceable promises, contract, and statutory regulations, including by wrongfully evicting PLAINTIFF from the Stadium Swim area, PLAINTIFF has sustained damages in an amount to be proven at trial.

104. As a direct and proximate result of DEFENDANTS' breach, PLAINTIFF has had to retain the services of am attorney in this matter, and he therefore seeks reimbursement for reasonable attorney's fees and costs.

///

///

///

15

# XIII.

# SEVENTH CLAIM FOR RELIEF

*Breach of the Covenant of Good Faith and Fair Dealing and Tortious Breach of the Covenant of Good Faith and Fair Dealing.*

**(Asserted Against Defendants CIRCA, DOE BUSINESS ENTITIES 2-10, and DOE INDIVIDUALS 2-50)**

105. PLAINTIFF incorporates by reference all other allegations of this *Complaint*, as though fully set forth herein.

106. PLAINTIFF was a customer who had repeatedly spent money at CIRCA's various venues, and who had money spent on his behalf in the form of drinks and gambling on the day he was evicted from the Stadium Swim area, May 16, 2021.

107. On that day, PLAINITFF was comped as he was on a privately-maintained guest list.

108. Even when he has been comped, however, PLAINTIFF has never been inside the Stadium Swim area without purchasing a drink or having one purchased for him.

109. As a customer, comped guest, and a frequent prior patron of the Stadium Swim area, PLAINTIFF had a reasonable expectation that he would be dealt with honestly, fairly, and in good faith as his friend, Mr. Scott, continually contracted with the property for various amenities, including by purchasing multiple beverages for PLAINTIFF inside the Stadium Swim area on May 16, 2021.

110. DEFENDANT acted in bad faith when it chose to manufacture a false reason to evict PLAINTIFF, a patron, from the Stadium Swim area after it had already taken approximately $200 of PLAINTIFF's friend's money.

111. As PLAINTIFF was escorted out, one of DEFENDANT's security employees admitted to PLAINTIFF that the proffered reason for PLAINTIFF's eviction from Stadium Swim was false.

112. DEFENDANTS breached their covenant of good faith and fair dealing to PLAINTIFF, and tortiously so, by evicting him from the CIRCA Stadium Swim area on May 16, 2021 under a bad faith pretext and in a manner that was unfaithful to PLAINTIFF's reasonable expectation that he would be treated equitably, fairly, and with dignity regardless of his disability while a

customer on CIRCA's property.

113. DEFENDANT also breached the covenant of good faith and fair dealing by refusing to review the security tapes from May 16, 2021 after having been requested to do so by PLAINTIFF.

114. DEFENDANTS then breached the covenant of good faith and fair dealing to PLAINTIFF a third time when, on May 25, 2021, they outright denied PLAINTIFF entry into the Stadium Swim area at all.

115. DEFENDANTS' breach of the covenant of good faith and fair dealing is further supported by the fact that, contrary to federal regulations, CIRCA never offered PLAINTIFF access to their place of public accommodation without his service dog.[5]

116. Thus, not only was Onyx improperly excluded, but so was PLAINTIFF by virtue of his disability; despite having spent money on property in good faith, he was tortiously denied the implied covenant of good faith and fair dealing.

## XIV.

## EIGTH CLAIM FOR RELIEF

### *Declaratory Relief*

**(Asserted Against Defendants CIRCA, CASTILLIO, DOE BUSINESS ENTITIES 2-10, and DOE INDIVIDUALS 2-50)**

117. PLAINTIFF incorporates by reference all other allegations of this *Complaint*, as though fully set forth herein.

118. Pursuant to 28 U.S.C. § 2201, Federal Rule of Civil Procedure 57, 42 U.S.C. § 12188, 36 C.F.R. § 36.501, NRS 30.030, NRS 30.100, NRS 651.090(2)(a), and the Court's inherent equitable powers, PLAINTIFF seeks, and is entitled to have, declaratory relief awarded in his favor, to declare his rights and obligations of the Defendants sued herein, where such declaratory relief is necessary and proper to the termination of the disputes raised herein, including as specifically prayed for below.

---

[5] Please see footnote 2, page 8 regarding this point.

119. This includes declaratory relief whereby the Court issues a declaration that Defendants unlawfully discriminated against, harassed, and retaliated against PLAINTIFF under the ADA and otherwise violated PLAINTIFF's rights under federal law and state law.

## XV.

## NINTH CLAIM FOR RELIEF

### *Injunctive Relief*

**(Asserted Against Defendants CIRCA, CASTILLIO, DOE BUSINESS ENTITIES 2-10, and DOE INDIVIDUALS 2-50)**

120. PLAINTIFF incorporates by reference all other allegations of this *Complaint*, as though fully set forth herein.

121. Based on the foregoing, PLAINTIFF has suffered an irreparable injury, and the remedies available at law, such as monetary damages, are inadequate to compensate for that injury.

122. PLAINTIFF is entitled to injunctive relief, which would include PLAINTIFF's reinstatement as a guest of the Stadium Swim area at the CIRCA property and/or the removal of any adverse information about PLAINTIFF and Onyx in Defendants' security files.

123. Considering the balance of hardships between PLAINTIFF and DEFENDANTS, a remedy in equity is warranted and the public interest will be served by issuance of such injunctive relief.

124. Pursuant to 28 U.S.C. § 2201, Federal Rule of Civil Procedure 65, 42 U.S.C. § 12188, 36 C.F.R. § 36.501, NRS 33.010 *et seq.*, NRS 651.090(2)(a), and the Court's inherent equitable powers, PLAINTIFF is entitled to have injunctive relief awarded in his favor, including by restraining the acts complained of and compelling the obligations of the Defendants sued herein to give effect to the declaratory and other relief awarded by the court in this action.

125. Such injunctive relief is necessary and proper to the resolution of the disputes raised herein, including as specifically prayed for below.

///

///

///

## XVI.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment against all Defendants, jointly and severally, as follows:

1. For general damages in an amount in excess of $10,000.00;

2. For special damages in an amount in excess of $10,000.00;

3. For past and future compensatory damages, and other expenses incurred by reason of DEFENDANTS' intentional misconduct, acts, omissions, carelessness, recklessness, negligence, gross negligence, deliberate indifference, and other culpable conduct, described herein, in an amount in excess of $10,000.00;

4. For punitive and exemplary damages;

5. For costs of the suit incurred herein;

6. For attorneys' fees, costs and prejudgment interest;

7. For a declaratory relief, in the form of declarations that:

Dated this 7th Day of September, 2021.    The Law Offices of Robert S. Melcic

/s/ Robert S. Melcic
ROBERT S. MELCIC
Nevada Bar Number 14923
4930 Mar Vista Way
Las Vegas, Nevada 89121
(702) 526-4235
Email: RobertMelcic@gmail.com
*Attorney for Plaintiff Martrail Robinson*